UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN R. WIEDERHOLD,

               Plaintiff,                              No. 10-cv-13414

vs.                                               Hon. Gerald E. Rosen

EMC MORTGAGE CORPORATION,
BANK OF AMERICA, N.A.,
SAXON MORTGAGE SERVICES, INC.,
and SAXON MORTGAGE, INC.,

               Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____March 30, 2012_____

PRESENT:   Honorable Gerald E. Rosen
                      United States District Chief Judge

## I.  INTRODUCTION

On August 17, 2010, in an attempt to prevent the foreclosure sale of his Swartz

Creek, Michigan home, Plaintiff Glenn R. Wiederhold instituted this action in Genesee

County Circuit Court alleging multiple counts against EMC Mortgage Corporation

("EMC"), the servicer of his mortgage; Bank of America, N.A. ("Bank of America"), the

current holder of his mortgage; Saxon Mortgage, Inc., the original mortgagee; and Saxon

Mortgage Services, Inc., Saxon Mortgage's affiliated servicer.  These counts include

claims for fraudulent and innocent misrepresentation (Counts I, II, III, VIII, IX and X),
negligence (Counts IV, V and VI), and intentional and negligent infliction of emotional
distress (Counts VII, XI, XII, and XIII).  All of these claims are predicated upon
Defendants' alleged actions and inactions with respect to a mortgage loan agreement
Plaintiff entered into with Defendant Saxon Mortgage on December 21, 1998 and
subsequent written forbearance agreements entered into in connection with mortgage and
note.  On August 26, 2010, Defendant EMC removed Plaintiff's action to this Court on
the basis of diversity jurisdiction.[1]

After the close of discovery, Defendants EMC and Bank of America filed a Fed.
R. Civ. P. 12(b)(6) motion to dismiss and Defendants Saxon Mortgage and Saxon
Mortgage Services (collectively "Saxon") filed a Rule 12(c) motion for judgment on the
pleadings and for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff has
responded to both motions and Defendants have replied.  Having reviewed and
considered the parties briefs and supporting exhibits, and the entire record of this matter,
the Court has concluded that oral argument is not necessary.  Therefore, pursuant to
Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided on the

---

[1]  EMC also alleged federal question jurisdiction under the Real Estate Settlement
Procedures Act ("RESPA") as an alternative basis for removal.  Although Plaintiff's
Complaint does mention RESPA § 2605(e), it does so only in passing in setting out the
facts.  *See* Complaint ¶¶ 26 and 28 ("In accordance with § 2605(e)(1)(B) of the Real
Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq. ("RESPA")), on August 15,
2010 Plaintiff forwarded via express mail a qualified written request to Saxon [and EMC]
requesting a complete investigation of its files. . . ."). However, Plaintiff makes no claim
under the statute in her Complaint.  Therefore, no federal question is presented.

briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

On December 21, 1998 Plaintiff Glenn Wiederhold purchased a home in Swartz Creek, Michigan with the proceeds from a $140,250 loan he obtained from Defendant Saxon Mortgage.  The loan was secured by a mortgage on the property.  The mortgage is now held Bank of America.

From February 1, 1999 until November 29, 2004, the mortgage was serviced by Meritech Mortgage Services, Inc. ("Meritech").  On November 30, 2004, servicing responsibilities for the mortgage were transferred to Defendant EMC.  EMC has continued to service the mortgage even after its assignment to the current mortgage holder, Bank of America.

At some point in time in 2002 or 2003, Plaintiff fell into default on his mortgage payments and he filed for Chapter 13 bankruptcy.[2]  Apparently, Chapter 13 asset/debt marshaling failed to help because even after obtaining Chapter 13 bankruptcy assistance, Plaintiff failed to keep current with his mortgage payments.

On January 31, 2006, EMC formally notified Plaintiff that he was in default under the terms of his mortgage and note.  [*See* Defendants' Ex. F.]  According to EMC's January 31, 2006 letter, Plaintiff had been in default since June 1, 2004, and as of January 30, 2006, he was in arrears $35,537.05.  *Id.*  The letter further notified Plaintiff that if the

---

[2]  Plaintiff filed for Chapter 13 bankruptcy on March 24, 2003.  The bankruptcy case was closed on August 4, 2005.  *See* EDMI Bankr. No. 03-31211.

full amount of the indebtedness was not paid by March 7, 2006, the lender would invoke

its remedies as provided in the note and mortgage, including accelerating the debt and

foreclosing on his property. *Id.*

Plaintiff subsequently entered into a "Repayment Agreement" on April 7, 2006, in

exchange for the Lender's agreement to forebear it right to proceed with foreclosure. *See*

Defendants' Ex. C. In this Repayment Agreement, Plaintiff agreed that he had missed 23

payments of $1,429.15, each, for principal and interest on the mortgage note, plus costs

and fees, and that, as a consequence, he had a total arrearage as of April 7, 2006 of

$35,351.77. *Id.* To pay down his arrearage and avoid foreclosure, he agreed that he

would make an initial payment of $4,860.00 by April 8, 2006 and would then make

subsequent monthly payments of $2,055.39 from May 1, 2006 through April 1, 2007.

However, as provided in the 2006 Agreement, Plaintiff expressly understood and agreed

that

> This Agreement will not fully cure [my] default. At the end of this
> Agreement, [my] arrearages will be $24,887.77. . . . If the terms of this
> Agreement are satisfied, EMC may elect to negotiate the remaining
> arrearage. . . at its own discretion.

*Id.* at ¶ 4.

Thereafter, on May 11, 2007, Plaintiff entered into a Loan Modification

Agreement with LaSalle Bank, the predecessor-in-interest of Defendant Bank of

America, regarding the then entire unpaid $135,162.25 principal balance on the mortgage

loan. *See* Defendants' Ex. D. The Loan Modification Agreement included a waiver and

4

release of claims.  *See id.*  Specifically in the Agreement, Plaintiff agreed:

> As consideration for Lender entering into this Agreement, **Borrower hereby remises, releases, and forever discharges Lender, its subsidiaries, affiliates, assigns and successors, and Lender's agents**, servants, officers, principals, trustees and employees ***from any and all manner of actions, causes of action, suits, debts, judgments, dues, accounts, covenants, claims and demands whatsoever, in law or equity, that the Borrower or Borrower's heirs and executors had, has or may have for any cause or thing whatsoever relating to this Agreement or the extension of credit to Borrower evidenced by the original Note and Security Instrument.*  **Borrower understands that this is a full and final release of all claims which Borrower may have against Lender** and nothing in this Agreement shall be deemed or otherwise construed as an admission of liability of any kind on the part of Lender, all such liability being expressly denied.  **Borrower acknowledges that he has had the opportunity to consult with counsel of his choosing prior to executing this Agreement.**

Ex. D, ¶ 3 (emphasis added).

Notwithstanding the financial accommodations repeatedly extended to Plaintiff, by June 2008, Plaintiff once again was in default.  As of November 21, 2008, Plaintiff had missed five principal and interest payments due under the Modification Agreement of $1,813.39 each, totaling $9,066.95.  *See* Defendants' Ex. E.  However, once again, the Lender agreed to forebear its right to pursue its remedies for default in exchange for Plaintiff's compliance with another Repayment Agreement.  *See id.*  In this November 21, 2008 Repayment Agreement, Plaintiff agreed that with and with accrued late charges, NSF fees, required escrow payments, and outstanding attorneys fees and costs for which he was liable, his total arrearage as of that date was $12,300.96.  *Id.*  He agreed to pay this total arrearage by immediately making an initial down payment of $2,203.00 and

5

then make six subsequent monthly payments of $2,311.22 from December 21, 2008

through May 21, 2009.  However,  as in the 2006 Agreement, Plaintiff expressly

understood and agreed with respect to the 2008 Agreement that

> This Agreement will not fully cure [my] default.  At the end of this
> Agreement, [my] arrearages will be $9,137.96. . . .  If the terms of this
> Agreement are satisfied, EMC may elect to negotiate the remaining
> arrearage. . . at its own discretion.

*Id.* at ¶ 4.

In 2010, however, Plaintiff once again defaulted on his mortgage payments.  He

was subsequently served with notice that his property would be foreclosed on August 18,

2010.  On August 17, 2010, in an attempt to avoid/forestall the foreclosure, Plaintiff

instituted this action.   Defendant Saxon, and Defendants Bank of America and EMC

now seek dismissal of, and summary judgment on, Plaintiff's First Amended Complaint.

III.  DISCUSSION

A.   APPLICABLE STANDARDS

Defendant Saxon's motion is structured as a motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c) and for summary judgment pursuant to Fed. R. Civ. P.

56.  Defendants Bank of America and EMC's motion is brought under Fed. R. Civ. P.

12(b)(6).  Although exhibits attached to a motion to dismiss that are referenced in and are

central to a plaintiff's complaint do not mandate that a Rule 12(b)(6) or 12(c) motion be

converted to one for summary judgment, *see* Fed. R. Civ. P. 12(d), in responding to

Defendants' motions, Plaintiff presents materials outside the pleadings for the Court's

6

consideration.  Therefore, both of Defendants' motions motion will decided under the standards applicable to Rule 56 motions for summary judgment.  *See* Fed. R. Civ. Proc. 12(d) ("If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006).  Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed."  Fed. R. Civ. P. 56(c)(1).  Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Finally, "the mere

7

existence of a scintilla of evidence that supports the nonmoving party's claims is

insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal

quotation marks, and citation omitted).

B.    PLAINTIFF WAIVED AND RELEASED HIS CLAIMS OF FRAUD AND
      MISREPRESENTATION

In Counts I, II, III, VIII and IX of Plaintiff's First Amended Complaint, Plaintiff

alleges claims of fraudulent and innocent misrepresentation against Defendant EMC

predicated upon alleged misrepresentations contained in the Repayment Agreements he

executed in an attempt to bring current his indebtedness.  However, on May 11, 2007,

Plaintiff executed a Loan Modification Agreement in which he specifically fully and

finally released and discharged LaSalle Bank, its successors, and its agents

> from any and all manner of actions, . . . claims and demands whatsoever. . .
> that [he] had, has or may have for any cause or thing whatsoever relating to
> this Agreement or the extension of credit to Borrower evidenced by the
> original Note and Security Instrument.

*See* Ex. D.

The language of this release is clear and unambiguous and the intent of the parties

can be ascertained from the plain and ordinary meaning of the language.  *Batshon v. Mar-*

*Que General Contractors, Inc.*, 463 Mich. 646, 624 N.W.2d 903 (2001).  Michigan

courts have repeatedly held that language releasing "any claim of any kind whatsoever"

is capable of but one reasonable interpretation:  that party executing the agreement

releases *all* claims, regardless of their label.  *See e.g., Gortnoy v. Norfolk & Western Ry.*,

216 Mich. App. 535, 540, 549 N.W.2d 612, 614 (1996); *Dombrowski v. City of Omer*,

8

199 Mich. App. 705, 708, 502 N.W.2d 707 (1993); *Moore v. Campbell, Wyant &*
*Cannon Foundry*, 142 Mich. App. 363, 368, 369 N.W.2d 904 (1985).

Plaintiff does not dispute the scope of the release.  Rather, he argues that the
release should is not enforceable and is subject to rescission because his execution of the
Loan Modification Agreement was induced by fraud and, hence, is voidable.[3]  When a
release is challenged, the plaintiff has the burden to make out a preponderate case for
setting it aside. *Van Avery v. Seizer*, 383 Mich. 486, 175 N.W.2d 744 (1970).

The alleged "fraud" relied upon by Plaintiff in making his fraudulent inducement
argument is his claim that EMC's representation in the 2007 Loan Modification
Agreement that Plaintiff's account was approximately $18,992.71 more than the actual
balance was a material false representation or concealment of Plaintiff's true balance.
*See* Plaintiff's Brief, pp. 12-13.

The law, however, is well-settled that where one who has been induced to enter
into a contract by fraud discovers the fraud while the contract is executory and thereafter,
with knowledge of the fraud, proceeds to complete the contract, he thereby affirms the
fraud and waives his right to rescind the contract.  *See Foster Mach. Co. v. Corel Mfg.*
*Co.*, 219 Mich. 455, 189 NW 228, 231 (1925); *Monroe v. Hoffman,* 276 Mich. 281, 267
NW 836 (1936), *overruled, in part by, Edson v. Harris*, 356 Mich. 175, 96 N.W.2d  767

---

[3]  Curiously, Plaintiff cites no Michigan law whatsoever in support of her
arguments with respect to the release; rather, he cites only Ohio law.

9

(1959);[4] *Allendale Mut. Ins. Co. v. Triple-S Technologies, Inc.*, 851 F. Supp. 277 (W.D. Mich. 1993);  *Kearney v. ABN Amro Mortgage Group*, 2005 WL 1863826 at * 2 (N.D. Ohio 2005).  *See also  Lewis v. CapFinancial III, LLC*, 2012 WL 443011 (Feb. 12, 2012) (applying Michigan law and holding that the plaintiff was on inquiry notice of  possible fraudulent conduct before signing an agreement releasing claims, and, therefore, waived his right to seek rescission of the release. (citing *Lewis v. Fifth Third Bank*, No. 10-CV-642-JTN (W.D. Mich.,  Aug. 26, 2011)).

In this case, the evidence Plaintiff himself presents establishes that he had knowledge, or at least was on inquiry notice, of the alleged fraudulent misrepresentations he relies upon in seeking to avoid the bar of the release he agreed to in the 2007 Loan Modification Agreement.  Plaintiff states in his Affidavit [Plaintiff's Ex. A] that he contacted EMC in 2005, and then at least once a month from February 2006 through June

---

[4] *Edson* overruled *Monroe* only to the extent that a plaintiff may, instead of seeking rescission of a release, elect to seek damages for fraud.  However, the law in Michigan is that a plaintiff must, in all cases where a legal claim is raised in contravention of a release agreement, tender any consideration received before or simultaneously with the filing of a suit that contravenes that release.  *Stefanac v. Cranbrook Ed Community (After Remand)*, 435 Mich. 155, 176, 458 N.W.2d 56 (1990); *Rinke v. Auto Moulding Co*., 226 Mich. App. 432, 436, 573 N.W.2d 344 (1997); *Collucci v. Eklund*, 240 Mich. App. 654, 659, 613 N.W.2d 402 (2000) .  There is no evidence that plaintiff tendered any such consideration before or simultaneously with the filing of his complaint. There are two exceptions to this rule: (1) the defendant waives the plaintiff's duty to tender back, or (2) there is fraud in the execution (meaning fraud is in inducing the plaintiff to sign a release under the belief that the plaintiff was signing something else). *Stefanac*, 435 Mich. at 165–166. However, there is no evidence in the record that defendant has waived plaintiff's duty to tender back, and plaintiff does not allege that he signed the release believing that he was signing something else.

2010 was in contact with Defendants "regarding their reported arrearages for my account and discrepancies between my payment records and the balances reflected for my account." Plaintiff's Affidavit, ¶ 9-10. The evidence Plaintiff presents also includes a Customer Account Activity Statement, dated May 18, 2006, provided to him by EMC which set forth EMC's record of every transaction on Plaintiff's mortgage account from January 1, 2004 through May 17, 2006. *See* Plaintiff's Ex. B(a). Notwithstanding Plaintiff's claim that he disagrees with the balances EMC showed for his account, he expressly agreed with the arrearages and costs and fees owing as stated in the April 7, 2006 and November 21, 2008 Repayment Agreements. *See* Defendant's Ex. C. He further executed the May 2007 Loan Modification Agreement, agreeing to the New Unpaid Principal Balance stated therein (with which he now states that he disagreed), and agreeing to the release of claims he now seeks to void on the basis of an allegation that the these amounts are materially false.

Plaintiff's evidence clearly shows that he had knowledge of any alleged material falsity of the amounts asserted EMC represented as due and owing by him on his mortgage at the time he executed the 2007 Agreement, Furthermore, Plaintiff clearly has enjoyed the benefit of the 2007 Agreement as it has enabled him to remain in his home and avoid foreclosure for more than four years. Under these circumstances, Plaintiff may not avoid the preclusive effect of the release. Accordingly, summary judgment will be entered in favor of Defendants on Counts I, II, III, VIII and IX of Plaintiff's First

Amended Complaint.

C.     PLAINTIFF HAS FAILED TO ESTABLISH A COGNIZABLE CLAIM OF
       NEGLIGENCE AGAINST DEFENDANTS EMC OR SAXON

       In Counts IV and V of his First Amended Complaint, Plaintiff alleges claims of

negligence against Defendants Saxon and EMC.  The negligence asserted by Plaintiff is

predicated upon his claim that these Defendants breached their statutory duty under

Section 2605(e) of RESPA, 12 U.S.C. § 2605(e), to timely take action to respond to

Plaintiff's requests to correct alleged errors relating to his mortgage payments.  Pursuant

to Section 2605(e), if a mortgage servicer receives a qualified written request ("QWR")

from a borrower, the servicer is to (1) provide the borrower a written acknowledgment of

receipt of the QWR within 20 days (excluding weekends and holidays), and (2) within 60

days of receipt of the QWR, conduct an investigation, make any appropriate corrections

needed in the borrower's account, and/or provide the borrower with a written explanation

why the servicer believes the account is correct as stated.  12 U.S.C. § 2605(e).[5]

---

       [5] Section 2605(e) provides as follows:

       (e) Duty of loan servicer to respond to borrower inquiries

       (1) Notice of receipt of inquiry

              (A) In general

              If any servicer of a federally related mortgage loan receives a
              qualified written request from the borrower (or an agent of
              the borrower) for information relating to the servicing of such
              loan, the servicer shall provide a written response
              acknowledging receipt of the correspondence within 20 days

12

(excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

       (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

       (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

       (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is

13

Whether a defendant owes a plaintiff a duty of care is a question of law for the court. *Beaudrie v. Henderson*, 465 Mich. 124, 130, 631 N.W.2d 308 (2001). It is true that violation of a statute may create a rebuttable presumption of negligence. *Kennedy v. Great Atlantic & Pacific Tea Co.*, 274 Mich.App. 710, 720-721, 737 N.W.2d 179 (2007). However, in this case, Plaintiff cannot establish that Defendants violated RESPA.

As indicated, to trigger Section 2605(e), a Plaintiff must first provide the mortgage servicer with a "qualified written request" or "QWR."  The evidence supplied by Plaintiff indicates that Plaintiff, through counsel, sent a QWR via express mail to Defendants Saxon and EMC on August 15, 2010.[6]  Assuming Defendants received Plaintiff's QWRs on August 16, 2010, pursuant to the statute, Defendants would have had until September

---

correct as determined by the servicer; and

   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

   (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 205(e).

   [6]  The Court takes judicial notice that August 15, 2010 was a Sunday.

14

13, 2010 to respond acknowledging their receipt of Plaintiff's request, and would have had until October 14, 2010 to complete their investigations and provide Plaintiff with their written determinations as to the accuracy of their accounts.

However, Plaintiff did not give Defendants an opportunity to comply with Section 2605(e) before initiating this action.  He filed his Complaint in this case on August 17, 2010.  As indicated, the earliest possible date on which Defendants could have received Plaintiff's QWRs was August 16, 2010, only one day before Plaintiff initiated this action.  Defendants clearly cannot be found to be negligent by failing to comply with the statute when they were afforded no opportunity to do so.  *See Delino . Platinum Community Bank*, 628 F. Supp. 2d 1226, 1233 (S.D. Cal. 2009) (holding that plaintiff could not state a claim for relief for violation of RESPA § 2505(e) based upon Defendants' failure to respond to QWR where the 60-day statutory period for response necessarily had not passed when plaintiff filed his complaint).  Furthermore, Defendant Saxon, not being Plaintiff's mortgage loan servicer in August 2010 when Plaintiff sent his QWR, had no obligation under Section 2505(e) to respond.  *See Johnson v. BNC Mortgage Corp.*, 2010 WL 3585100 (E.D. Mich. 2010).  For the foregoing reasons, Plaintiff's claims of negligence against Defendants Saxon and EMC will be dismissed.

D.   PLAINTIFF HAS FAILED TO ALLEGE ANY DUTY OUTSIDE OF A CONTRACTUAL DUTY TO SUPPORT A CLAIM OF NEGLIGENCE AGAINST DEFENDANT BANK OF AMERICA

In Count VI, Plaintiff alleges that Defendant Bank of America was negligent in

15

commencing foreclosure proceedings on his property.  Whether or not Defendant had or

has a right to commence foreclosure proceedings is based on contract (i.e., the mortgage).

However, it is well-established in Michigan that to make out a claim for negligence there

must be a legal duty separate and distinct from the contractual obligation.  *Rinaldo's*

*Constr. Corp. v. Michigan Bell Tel. Co*., 454 Mich. 65, 84, 559 N.W.2d 647 (1997). In

*Rinaldo*, the plaintiff alleged that the defendant telephone company was negligent in

failing to transfer the plaintiff's telephone service to its new address, resulting in the loss

of business revenue.  In determining whether the plaintiff could maintain an action in

tort, the Court stated that "the threshold inquiry is whether the plaintiff alleges violation

of a legal duty separate and distinct from the contractual obligation." *Id*. at 84, 559

N.W.2d 647.  Relying on *Hart v. Ludwig*, 347 Mich. 559, 565, 79 N.W.2d 895 (1956),

the Court elaborated that "'if a relation exists which would give rise to a legal duty

without enforcing the contract promise itself, the tort action will lie, otherwise not.'" *Id*.

Because the plaintiff failed to allege the "violation of an independent legal duty distinct

from the duties arising out of the contractual relationship," the *Rinaldo* Court held that

there existed no cognizable action in tort, "'regardless of the variety of names plaintiff

gives the claim.'"  *Id*. at 85, 559 N.W.2d 647, (quoting *Valentine v. Michigan Bell Tel*.

Co., 388 Mich. 19, 22, 199 N.W.2d 182 (1972) (some internal punctuation omitted)).

Plaintiff here does not dispute that he has failed to allege any duty outside of

Defendant Bank of America's contractual duty to support his claim of negligent

16

commencement of foreclosure proceedings.  Therefore, Defendants will be granted

summary judgment on Count VI of Plaintiff's First Amended Complaint.[7]

E.    PLAINTIFF HAS FAILED TO MAKE OUT A CLAIM OF INTENTIONAL OR
      NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In Count VII Plaintiff alleges a claim of intentional infliction of emotional distress

against Defendant EMC.

The Michigan Supreme Court, however, has never adopted the tort of intentional

infliction of emotional distress into Michigan jurisprudence.  *See Smith v. Calvary

Christian Church*, 462 Mich. 679, 686 n. 7, 614 N.W.2d 590, 593 n. 7 (2000); *Roberts v.

Auto Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905, 907 (1985); *Khalifa v.

Henry Ford Hospital*, 156 Mich. App. 485, 499, 401 N.W.2d 884, 890 (1987); *Andrews

v. Prudential Securities, Inc.*, 160 F.3d 304, 309 (6th Cir.1998).  However, the Michigan

Court has described the standards that would have to be met for satisfaction of such a

claim:

> The cases thus far decided have found liability only where the
> defendant's conduct had been extreme and outrageous.  It has not been

---

[7] Although Plaintiff appears to have conceded that his negligence claim as stated
in Count VI of his First Amended Complaint fails, he attempts in his Response Brief to
refashion his claim by stating, "If Bank of America is a servicer as that term is defined
under RESPA, then Bank of America has a duty under RESPA, the violation of which is
actionable under RESPA."  *See* Response to EMC and Bank of America's Motion, p. 14.
However, as indicated, Plaintiff has never alleged a RESPA claim in this action and to
the extent he is attempting to allege, as he did with respect to Defendants EMC and
Saxon, a negligence claim based on violation of Section 2605(e), Plaintiff has not come
forward with any evidence to show that he ever sent Bank of America a qualified written
request so as to trigger any liability under the statute.

17

enough that the defendant acted with an intent which is tortious or even criminal, or that he had intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.  The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  There is no occasion for the law to intervene in every case where someone's feelings are hurt.  There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Roberts v. Auto Owners, supra*, 422 Mich. at 602-603, *quoting* Restatement 2d of Torts, §

46, comment d.

Plaintiff's alleges that EMC failed correct his account as requested, advised him to

continue making payments to bring his account arrearages current, and needlessly

extended his loan repayment term, giving rise to Plaintiff's anxiety over the possibility of

losing his home in foreclosure.  All of these claims arise as a result of the contractual

relationship Plaintiff had with his mortgage lender and servicer.

However, no liability for the tort of intentional infliction of emotional distress will

lie where the conduct complained of amounts to nothing more than breach of a

18

contractual promise.  *Roberts, supra*, 422 Mich. at 603-04.  *See also Ursery v. Option One Mortgage Corp.,* 2007 WL 2192657, at * 16 (Mich. App 2007) (plaintiff's claim predicated on allegations that his mortgage lender breached contracts with him in various ways and foreclosed on his property fails to satisfy the standard for extreme and outrageous conduct required under Michigan case law); *Robbins v. Mortgage Electronic Registration Systems, Inc.,* 2009 WL 375743 (W.D. Mich. 2009) (actions taken to foreclose on a mortgage held not to rise to the level of extreme and outrageous conduct).

Moreover, even though conduct may be extreme and outrageous, the actor will not be held liable where he has done nothing other than to insist on legal rights in a permissible way, even if he is aware that doing so will cause the plaintiff emotional distress. *Early Detection Ctr., P.C. v. New York Life Ins Co*., 157 Mich. App. 618, 626; 403 N.W. 2d 830 (1986); *Warren v. June's Mobile Home Village & Sales, Inc.*, 66 Mich. App. 386, 391, 239 N.W. 2d 380, 383 (1976).  This is, at best, all that Plaintiff has alleged in this case.  While Plaintiff may well have suffered anxiety as a result of Defendant's alleged actions, the actions simply do not rise to the level of extreme and outrageous conduct required to establish the tort of intentional infliction of emotional distress under applicable law.

Finally, in Counts XI, XII and XIII, Plaintiff alleges claims of negligent infliction of emotional distress against Defendants Saxon, EMC and Bank of America, respectively.  However, the elements of this tort plainly do not apply under the facts

19

presented here.  *See, Taylor v. Kurapati*, 236 Mich. App. 315, 360, 600 N.W.2d 670

(1999) ("A plaintiff may recover for negligent infliction of emotional distress where (1)

the injury threatened or inflicted on the third person is a serious one, of a nature to cause

severe mental disturbance to the plaintiff, (2) the shock results in actual physical harm,

(3) the plaintiff is a member of the third person's immediate family, and (4) the plaintiff is

present at the time of the accident or suffers shock "fairly contemporaneous" with the

accident.").  Accordingly, Defendants' motions to dismiss Counts VII, XI, XII, and XIII

will be granted.

CONCLUSION

For all of the reasons stated in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants Saxon Mortgage and Saxon

Mortgage Services's Motion for Judgment on the Pleadings and for Summary Judgment

**[Dkt. # 25]** and Defendants EMC and Bank of America's Motion to Dismiss **[Dkt. # 26]**

are hereby GRANTED.  Therefore,

IT IS FURTHER ORDERED that Plaintiff's Complaint be DISMISSED, in its

entirety, with prejudice.

Let Judgment be entered accordingly.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: March 30, 2012

20

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 2, 2012, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager